IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HANK DRAGER and THOMAS LE, on behalf of themselves and all others similarly situated, | ) | Case No.: 2009cv6481 |
| Plaintiffs, | ) | Judge Hart |
| vs. | ) | Magistrate Judge Brown |
| BROADWAY SUPERMARKET, an Illinois corporation, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S THIRD MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FOR LEAVE FOR FIVE ADDITIONAL INTERROGATORIES**

Plaintiffs HANK DRAGER AND THOMAS LE, through their attorneys, and for their **Third Motion to Compel Production of Documents and for Leave for Five Additional Interrogatories**. In support, Plaintiffs state as follows:

I.

INTRODUCTION

1. This is a Fair Credit Reporting Act, 15 U.S.C. §1681c(g) ("FCRA") class action based upon the defendant Chicago supermarket's willful failure to properly truncate credit card receipts provided to customers, thus exposing them to identity theft, including credit card fraud. *E.g. Miller-Huggins v. Mario's Butcher Shop, Inc.*, 2010 WL 658863 (N.D.Ill. Feb. 22, 2010 N.D.Ill. 2010). The portion of the FCRA upon which this case is based was part of the 2003 "FACTA" amendment to the FCRA.

2. Plaintiffs seek statutory damages of between $100 and $1,000 per receipt. 15 U.S.C. §1681n. In order to recover such damages, plaintiffs must prove that the defendant acted "willfully." The United States Supreme Court held in *Safeco Ins. Co. of America v. Burr*, 551

U.S. 47, 58-60 (2007), that the term "willful" as used in the FCRA means "reckless," or "reckless disregard." As explained herein, and in plaintiff's first and second motions to compel, Plaintiffs' discovery is aimed at learning more about the defendant's credit card processing, the identities and number of the class members, and, of course, the extent of the defendant's willfulness and recklessness.

3. Duri*ng* the in-court hearing regarding plaintiff's second motion to compel, defendant committed to producing all documents requested, including the companies that deal with credit card processing. Defense counsel Ma represented to the Court and to plaintiff on the record that the "merchant bank" that deals with defendant's credit card processing was International Bank of Chicago. Plaintiffs learned through a subpoena to that bank that this statement was false. Exhibit H. Portions of certain exhibits have been redacted or truncated because of privacy concerns.

4. And so it goes for this case. Defendant has failed to provide even the most basic information, including information required by Fed.R.Civ.P. 26(a)(1). Plaintiffs have now filed three motions and made countless in-person, telephone and written attempts to obtain adequate responses, and defendant has not been cooperative. Plaintiff therefore moves to compel.

## II.

## MEET AND CONFER

5. Plaintiffs have complied with Local Rule 37.2 before filing this Motion to Compel. The below is a non-exhaustive list of efforts Plaintiffs' counsel has made to obtain proper responses from the defendant.

6. On or about May 13 and 15 of 2010, Plaintiffs, through their counsel, submitted to Defendant request to supplement their answers for (1) the exact number of receipts within the

twelve months period prior to the date of filing the instant action, and (2) communications related to FACTA compliance. However, as of the date of this writing, which is more than 30 days later, Defendant refused or failed to supplement their answers to Plaintiffs' request for production of documents. As Plaintiffs will demonstrate in the following paragraphs, Defendant's have been dragged its feet for over eight months, set up obstacle every single step of the discovery process in an effort to thwart Plaintiffs' discovery, and played the role of a court in determining which documents it would produce and which it would not, even if the documents it refuses to produce are relevant and determinative in resolving the crux of a FACTA litigation like this action.

7. Before Plaintiffs requested supplemental responses, Plaintiffs first propounded discovery upon Defendant on November 17, 2009. Exhibit A. Defendant failed to comply with discovery on or before December 17, 2009. On January 14, 2010, Plaintiffs filed their first motion to compel. At the hearing on Plaintiffs' motion to compel, this Court denied their motion without prejudice, and ordered Defendant to respond to discovery by February 26, 2010. Dkt. No. 14. Defendant's responses to Plaintiff's discovery was wholly inadequate, and on March 29, 2010, Plaintiffs filed their second motion to compel discovery. At the hearing on Plaintiff's second motion to compel, this Court granted Plaintiffs' motion in part and denied in part, and ordered Defendant to respond to discovery by April 29, 2010. Dkt. No. 18.

8. As of the date of filing this motion, Defendant withheld and continues to withhold documents and information that are relevant and tend to lead to evidence admissible at trial.

## III.

## GENERAL LAW APPLICABLE IN DISCOVERY

9. "Mutual knowledge of all the relevant facts gathered by both parties is essential to

proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Rules have broadened the scope of discovery to "any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

10. "[T]he discovery-deposition provisions of the Federal Rules, were intended to insure 'proper litigation' by making the trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963) (internal citations and quotations omitted). Furthermore, complete interrogatory responses may help the parties avoid unnecessary depositions and further cost to the parties. *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 307-308 (S.D.N.Y. 1982).

11. Compelling production of materials sought promotes justice and quick resolution a matter. *Yancey v. Hooten*, 180 F.R.D. 203 (D.Conn. 1998) (compelling discovery in FDCPA case). *Lucas v. GC Services*, 226 F.R.D. 328 (N.D.Ind. 2004) (FDCPA 1692g action) (sister case lost merits on appeal) compelling all discovery requests as sanction. "The defendants do not get to determine unilaterally the scope and timing of discovery." *Lucas v. GC Servs. L.P.*, 226 F.R.D. 328, 331 (N.D. Ind. 2004).

12. "[T]he mere statement by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery "must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982).

13. Compelling production of materials sought promotes justice and quick resolution a matter. *Yancey v. Hooten*, 180 F.R.D. 203 (D.Conn. 1998) (compelling discovery in FDCPA case); *Lucas v. GC Services*, 226 F.R.D. 328 (N.D.Ind. 2004) (FDCPA 1692g action) (sister case lost merits on appeal) compelling all discovery requests as sanction. "The defendants do not get to determine unilaterally the scope and timing of discovery." *Lucas v. GC Servs. L.P.*, 226 F.R.D. 328, 331 (N.D. Ind. 2004).

14. An attorney is required to monitor discovery compliance and ensure that the client has both preserved potentially discoverable electronic materials, and that the client has performed a reasonable search. See Fed.R.Civ.P. 26(b)(2); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004); *Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932 (S.D.Cal. Jan 07, 2008), vacated in irrelevant part, 2008 WL 638108 (S.D.Cal. Mar 05, 2008). The result of this is likely waiver. *Ner-Tamid Congregation of North Town v. Krivoruchko*, 2009 WL 152587, 08 C 1261 (N.D.Ill. Jan. 22, 2009); *Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D.Ill. 2008). The result of the failure to perform an adequate search is waver. *Zubaluke*.

15. Discovery requires full disclosure, with some limited exceptions, of all matters relevant to the subject matter of the suit. *Boettcher v. Fournie Farms, Inc.*, 612 N.E.2d 969, 243 Ill.App.3d 940 (5th Dist. 1993). "Nothing less than full compliance is satisfactory" and [a] 'catch me if you can' attitude is not only unacceptable, but intolerable." *Id*. at 975. As explained herein, defendant Broadway Supermarkets has willfully failed to produce monthly statements concerning its credit card processing.

IV.

ARGUMENT FOR MATERIALS RELATED TO FACTA IN THIS CLASS ACTION

16. In the first set of discovery dated November 17, 2009, Plaintiffs have requested

full and complete response any documents that mention FACTA. Specifically, Plaintiff's document request stated and Defendant responded as follows:

> **Document Request 1** - All documents relating to the alleged compliance or noncompliance of the FACTA amendment to the FCRA, including 15 U.S.C. Sec. 1682c(g), and the printing of the expiration date or the last five digit number of Plaintiffs' and members of the Class' credit or debit cards.
>
> **Answer**: None, except for the Linus International Inc. contract for the installation of the cash register software (see Answer to Request to Produce 19. below); such is all Defendant has in writing concerning any alleged compliance or noncompliance with FACTA or FCRA.

17. On April 29, 2010, Defendant provided their supplemental responses to Plaintiff but still failed or refused to provide relevant documents that it has in its possession or control. Exhibit B.

> **Supplemental Answer to request (sic) to produce (sic) 1**: Defendant would like to note for the Court while the Plaintiffs have not explicitly requested production of "receipts", it is making a good faith attempt to produce any "document" related to the compliance or noncompliance with regard to FACTA or FRCA—where "documents encompass receipts.

Exhibit B.

18. On or about May 6, 2010, Plaintiff repeated their request that Defendant provide these same materials. Exhibit C.

19. Defendant produced no or incomplete documents.

20. Not only Defendant refused or failed to provide relevant documents it has in its possession or control, it has deliberately withheld these documents, opting to take on the role of determining what to produce and not to produce. For instance, through subpoena duces tecum to Electronic Exchange System, a third party and a credit/debit card processing company that Defendant used in facilitating credit/debit card transactions, Plaintiffs obtained documents that

are not only relevant to FACTA compliance notice but also help determine the number of potential members in the putative class. Exhibits D and E.[1] There is no question that defendant has copies of these, and other, "merchant statements," and has decided not to produce them.

21. These documents are very good evidence that defendant knew, or should have known, about FACTA at the time of the violations. The September 2009 Merchant Statement, Exhibit D, and October 2009 Merchant Statement, Exhibit E, refer defendant to a website that point-blank advised Defendant to be in compliance with FACTA. Specifically, printed on page 8 of the September 2009 Merchant Statement is the following message:

> PCI COMPLIANCE
>
> LEARN HOW YOU CAN MAINTAIN YOU PCI COMPLIANCE AND ENSURE YOUR RECEIPTS ARE PROPERLY TRUNCATED BY VISITING OUR WEBSITE AT WWW.COMPLIANCEFACTS.COM OR CALL US (888)682-4464 AND CHOOSE OPTION 1, THEN OPTION 1 AGAIN, FOR ASSISTANCE. (Uppercases in original).

Also printed on page 8 of the October 2009 Merchant Statement is the following message:

> TRUNCATE YOUR RECEIPTS!
>
> LEARN HOW YOU CAN MAINTAIN YOU PCI COMPLIANCE AND ENSURE YOUR RECEIPTS ARE PROPERLY TRUNCATED BY VISITING OUR WEBSITE AT WWW.COMPLIANCEFACTS.COM OR CALL US (888)682-4464 AND CHOOSE OPTION 1, THEN OPTION 1 AGAIN, FOR ASSISTANCE. (Uppercases in original).

22. A visit to the website, www.compliancefacts.com, shows that the website provides information relating to proper truncation of credit/debit card receipts. Exhibit F. Thus, the September 2009 Merchant Statement and October 2009 Merchant Statement contain direct and material information that is related to FACTA compliance, and Defendant should have

[1] In keeping with common usage in the industry of credit/debit card transaction processing, these documents are called “merchant statements” which are issued monthly by Electronic Exchange System to its merchant customers like Defendant Broadway.

produced the merchant statements in response to Plaintiffs' discovery. Although Defendant has ready access to, and is in possession and control of, the monthly merchant statements, Defendant refused and continues to refuse to produce the documents. Exhibit B, "Supplemental Answer to Plaintiffs' Request to Produce 16," "Answer to Plaintiffs' request to produce 17." In fact, defendant has not produced one page of monthly or other periodic statements concerning its credit card processing, and has only produced what appears to be a fraction of other credit card processing documents.

23. An attorney is required to monitor discovery compliance and ensure that the client has both preserved potentially discoverable electronic materials, and that the client has performed a reasonable search. *See* Fed.R.Civ.P. 26(b)(2); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004). Plaintiffs submit that Defendant's counsel, Pengtian Ma, has failed to monitor discovery compliance to ensure that Defendant has both preserve discoverable materials and has performed reasonable due diligence search in response to discovery requests. During Rule 37 talks, counsel for plaintiff asked defense counsel for a specific description of the searches that have been conducted. Defense counsel ignored this request.

24. Therefore, Plaintiffs request that this Court compel and order Defendant produce these monthly merchant statements for the twelve months prior to the date of filing the instant action.

**Determining the Number of Members in the Putative Class**

25. Defendant also failed or refused to provide the number of receipts within thte relevant time period even though Defendant has ready access to, is in possession or control of information that permitted computation of the number of receipts with high certainty.

26. In their discovery request dated November 17, 2009, Plaintiffs sought the size of

the putative class as follows:

> **Interrogatory No. 5** - State the number of electronically printed receipts provided to customers by Defendant, at the point of sale or transaction in a transaction occurring after June 3, 2008 until the date of answering this Request, inclusive, that contain either more than five digit number of the person's credit or debit card number or the person's credit or debit card expiration data, or both.
>
> Answer: The Defendant is in the midst of investigating this fact requested.
>
> **Interrogatory 15**: List all possible sources from which Defendant may be able to compile a list of the persons to whom it provided an electronically printed receipt or receipts at the point of sale or transaction, in a transaction in an Illinois store occurring after June 3, 2008, which receipt displays either (a) more than the last five digits of the person's credit or debit card number, or (b) the expiration date of the person's credit or debit card, or both.
>
> Answer: Defendant is investigating these facts requested.

Exhibit A.

27. In its supplemental answer to Interrogatory No. 5, Defendant only provided an estimate even though it had full knowledge of the exact number of receipts or transaction per types of credit or debit card, and per month. Specifically, Defendant answered as follows:

> **Supplemental Answer to Interrogatory 15**: Defendant does not know the exact number. It is estimated that there are between 9,000-14,000 such receipts, based on the typical number of transactions per day it gets. However, it offers for plaintiffs' copying, TWELVE (12) boxes of receipt from June 2008 to December 2009, under the supervision of defendant's attorney(s) at defendant attorney's office at a mutually agreed-upon, reasonable time, Monday-Friday, during office hours from 9:00 a.m. -5:00p.m. (See Supplemental Answer to Request to Produce #1).

Exhibit B.

28. For example, the September 2009 Merchant Statement, Exhibit D, provides a summary of deposit items for the month of September and shows on page 5 the total number of sales, i.e., receipts, were 3,653 for a total of $138,019.17 in gross sales. Similarly, the October 2009 Merchant Statement, Exhibit E, provides a summary of deposit items for the month of October and shows on page 5 the total number of sales, i.e., receipts, were 3,615 for a total gross

sales in the amount $138,325.03. The merchant statements, Exhibits D and E, also provide a detailed breakdown of the types of credit/debit cards used in the purchase, i.e., Visa, MasterCard, Discovery, and so on. Plaintiffs posit that the monthly merchant statements for other months would have similar format and summary of transactions, and, therefore, Defendant would be able to provide the exact number of receipts during the twelve months period.

29. In an e-mail dated May 15, 2010, Exhibit G, Plaintiffs specifically requested Defendant for the exact number of receipts and a detailed breakdown of each type of card as they can be obtained fairly easy through simple reading of the monthly merchant statements, e.g., Exhibits D and E. However, as of the date of this motion, Defendant failed or refused, and continues to refuse providing the remaining merchant statements. Exhibit G. Defendant did so even though it has ready access to the merchant statements, the merchant statements are relevant to the instant action as they are related to FACTA compliance and number of receipts in the class, to the extent whether Defendant has willfully or recklessly failed to comply with FACTA requirements.

**Defendant Refused and Continues to Refuse to Provide Financial Records**

30. Plaintiffs sought information related to Defendant's financial records as Defendant has stated in open court that the class should not be certified because it could not pay for a very large judgment. However, Defendant refused and continues to refuse providing Plaintiff the requested information. Exhibit B, Def. Ans. Document Prod. Nos. 11, 12, 13.

31. In the alternative, if Defendant refused to provide its financial records, Plaintiffs request that this Court not permit Defendant make argument based on its financial situation.

FIVE ADDITIONAL INTERROGATORIES

32. Plaintiff also requests leave to serve five additional interrogatories upon the

defendant. Federal Rule of Civil Procedure 33 permits each party to serve 25 interrogatories to an opposing party. This Rule is not meant as an absolute bar to limit the number of interrogatories in every case to 25. Instead, the purpose of the rule, as of the other discovery rules, is to avoid unnecessary costs, minimize delay and narrow the issues at trial. Moore's Federal Practice § 33.03 (2006). As the Court will see, Plaintiffs' motion seeks relief that would drastically reduce the burden and costs of discovery in this case. In fact, Rule 33 contemplates that parties may seek additional interrogatories from the Court to the extent the request is consistent with Rule 26(b)(2). Fed. R. Civ. P. 33(a)(1).

33. Recently, Plaintiffs have learned there were certain communications between Defendant's counsel and counsel for third parties and the third parties themselves.

WHEREFORE, Plaintiffs respectfully request that this Court compel Defendant (1) to produce the remaining monthly merchant statements, i.e., from June 2008 through October 2009; (2) to provide the exact number of receipts as derived from these monthly merchant statements; (3) Defendant's financial records in the past three years, and (4) to allow Plaintiff to propound five additional interrogatories upon Defendant, and order any other relief the Court finds proper, including but not limited to evidentiary or monetary sanctions for willful discovery noncompliance.

Respectfully Submitted,

/s/Alexander H. Burke

*Counsel for Plaintiffs*:

Kenneth M. DucDuong, Esq.
KMD LAW OFFICE

1055 W. Catalpa Ave. #216
Chicago, IL 60640
Tel.: (773) 561-6587
Fax: (773) 751-5065
ARDC No. 6286069 (IL)

Alexander H. Burke, Esq.
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ARDC No. 6281095 (IL)